Group, Inc. and Goldman Sachs & Company. I'll call them GS Group and GS Co. respectively during my argument for clarity. I'd like to reserve three minutes of time for rebuttal if I may.The core question in this case, Your Honor, is not in dispute. It's whether Mr. If he was an officer of GS Co., then under the bylaws of GS Group, which was the corporate parent of GS Co., he would be entitled to advancement of legal fees pursuant to Section 6.4 of those bylaws of GS Group. He wants those legal fees advanced to him so that he can pay his attorneys for defending him in the criminal proceedings that have been brought he has no advancement right. That's not in dispute. Now, as we've shown in our briefs, Mr. Alyenikovv unambiguously was not an officer of GS Co., and therefore this court should reverse the grant of summary judgment in favor of Mr. Alyenikovv on his advancement claim and direct the district court to enter summary judgment in favor of GS Group on its cross-motion. I would think, you know, if you took a survey abroad in market here in Philadelphia and asked anyone there, is a vice president an officer of a company, I'll bet you most would say, yeah, a vice president is an officer. Your Honor, I'm not sure respectfully that that's the right question to ask. The Delaware case law instructs that if a term is not defined in a contract or in a corporate instrument like a bylaw, which is interpreted like a contract, the appropriate place to look is the dictionary. The appropriate place to look is not just the general public's view of what a particular word is. And moreover, the term vice president is not the contractual term that's in dispute here. The term officer is what's important. And under the Delaware Supreme Court decision in Lorillard, which Mr. Alyenikovv cited at page 28 of his brief, dictionaries are more than just a discretionary interpretive aid. They're actually a mandatory place that a court must look if a term is not defined in a contract. Well, you know, the problem is the bylaws that I look at seem to toggle between vice president and officer almost as if they were one and the same. I don't think that's right, Your Honor. I think section 6.4 is really the place we have to look for the relevant contractual language. Section 6.4, which is at page 117 of the appendix, says that advancement will be made to anyone who is a director, officer, trustee, member, stockholder, partner, incorporator, or liquidator of a subsidiary of the corporation. We're dealing here with a subsidiary. That's GS Co. 4.1 doesn't have any bearing on the analysis? It doesn't, Your Honor. 4.1 relates only to the GS Group, the parent company. 6.4 is a separate provision, and it sets out the overall scheme for providing advancement to people who are at a subsidiary of the company. And further down in section 6.4, we have a description of what officer means in the context of the litany of words I just went through. When is a vice president, then, in your opinion? A vice president is a job title at GS Co. Nothing more, nothing less. It's a job title. It is not enough in and of itself to qualify someone as an officer. If someone was a, quote-unquote, corporate vice president, would you have the same response? I would have the same response, Your Honor. Absolutely. So that person wouldn't be entitled to identification or advancement either? Only if that person was an officer. If that person had been elected or appointed to an officer position by the general partner of GS Co., then the answer would be yes. But absent that election or appointment, the answer is no. And really, the sin qua non of being an officer, as shown in all the dictionary definitions that we've cited, and in dictionary definitions that we didn't cite, because I made sure there weren't any that were speak to authority being the key to being an officer, having a level of authority, a position of command or trust. So what makes a vice president an officer? Well, nothing, we submit. Is there a process involved? There is a process involved. But I think before you get to that process, you need to look at the – and that process is election or appointment by GS Co.'s general partner. And we have documents that go to that. You cited a number of sources to look for the dictionary definition. And the common terms are appointed or elected, someone in a position of authority or position of trust. Okay. At least for purposes of Alenikoff. Wasn't he appointed to this position? No, he wasn't. Why not? Because the appointment process is laid out at pages 341 and – 341 through 353 of the record, excuse me. Those are the corporate – Is that part of the bylaws? Excuse me? Is that part of the bylaws? That is not part of the bylaws. But that process is the only way in the record that any officer has ever been made of GS Co. My address – You're saying that that's how an officer is made. But if you look at the dictionary definition, they use the word appointed. And I'm hard-pressed to find any distinction between appointed and employed or hired. I mean, somebody got appointed to a job, they got hired to a job, they got employed to a job. Isn't that all the same? If he was appointed to be an officer, then that would be one thing. He was appointed to his position. He was hired to his position as vice president. He was appointed to his position. Can you agree with me he was appointed to his position? I will – I'm not sure that I would agree with that for purposes of the election or appointment procedure that's really in all of these definitions. Can you agree with me he was appointed to the position that he held? He was appointed via being hired as a vice president. Okay. As a vice president. All right. So the question then would next be, did he have authority? And the answer there is clearly no. Why would that be? It is clear from what Mr. Lenikoff brings to this litigation. He was the highest-paid programmer in his unit, was he not? In his subgroup. Okay. And that's a group that is part of a 2,000-person division at GS Co. And no supervisory responsibility whatsoever? Zero, Your Honor. If you look at page 450 of the record, there is an interrogatory whereby we ask Mr. Lenikoff to identify any managerial, supervisory, or policymaking authority that he either received or exercised while employed as a vice president at GS Co. What's the purpose? Why would you appoint somebody a vice president? Is it just a pay issue? Is that it? It's in part a pay issue.  That's the only meaning that we can ascribe to the term vice president. It is a designation of relative seniority. Within Goldman Sachs & Company, there's effectively five levels. If you're senior, that means you're above other people, doesn't it? You're above other people if you're a vice president, absolutely. And everyone that's below the vice president position, even Mr. Lenikoff admits, are not officers. So you're only talking about pay scale. You're not talking about responsibilities. No. We are talking only about responsibilities, only about authority. Mr. Lenikoff admits, again, at page 450, also at page 460, page 425 through 427 of the record, that he had no policymaking authority. He didn't supervise anyone. He bore none of the badges of being an officer. And it is going back to the plain meaning of what officer is. And also, I think it's very important for the court to consider the overall scheme of what this bylaw does. If the court looks at the GMG decision from the Delaware Supreme Court that's cited by both sides, you need to look at the overall scheme of a contract or a bylaw in order to interpret what it's doing. Here, the overall scheme is informed not just by the use of the word officer, but obviously by the language around it. And if you look at the second and third subcategory of officer in Section 6.4, they are someone who is acting in a similar capacity to an officer, that's subgroup two, and then someone who is the manager of the non-corporate subsidiary, that's subgroup three. Mr. Lenikoff doesn't even – Didn't the lower court go through this kind of analysis in detail? I apologize, Your Honor. Didn't the lower court go through that very analysis in detail and basically label it as filigree on the part of Goldman? Being benevolent in their title, in other words. Well, I think what the district court did – I'm sorry. I'm not sure I understood the question, Your Honor. I do apologize. The question is, did not the lower court go through the same kind of analysis that you are articulating right now to come up with this decision? No, it didn't, Your Honor. It said, plain and simple, if you have the title of vice president, you're an officer. It's the first case ever to hold that. The CRA case in the Second Circuit, the Gold case from the Fourth Circuit, the In re Borders and NMI and public access cases all found that having the title of vice president is not enough in and of itself to be an officer. You need to undertake a deeper analysis of what the person did. And in that regard, I would cite the course of the recent Act Division decision from the Delaware Supreme Court. If I say to you, Mr. Duffy, that having looked through this, I had a lot of trouble determining whether vice presidents, such as Mr. Aranikoff, is an officer or not, shouldn't that be held against you under Delaware law that you should have drafted a clear set of bylaws? No, Your Honor. You're referring to the contra preferentum doctrine that Mr. Aranikoff has tried to invoke. There is no case applying the contra preferentum doctrine or its corollary, the reasonable expectations of investors doctrine, to someone who is trying to come within a contract, trying to assert that that person has rights under a contract, knocking at the door of the building that represents the contract and saying, I belong in there. All of those cases, the Stockman case and every other case cited by Mr. Aranikoff, is a case where there's no dispute that the person who is ultimately deemed to be entitled to the benefit of the contra preferentum doctrine was a stockholder, was a limited partner. You know, if I said to you, you know, this is a bit of a mess. I have to go from this part to that part of the bylaws. I just can't put my finger on whether he is a vice president is an officer or not. Again, Your Honor, I think I would point to the DMG case from the Delaware Supreme Court from 2012. It says you need to look at the overall scheme. And where I was going before was that the overall scheme here is that advancement under Section 6.4 is given only to people who are at the senior-most positions. Look at people who get it other than officers. On page 117 of the appendix, directors, trustees, members, stockholders, partners, incorporators, and then look at those second two provisions of the officer definition. But I mean, should we really have to go through all that? Could you not simply say that a vice president who was not appointed under the appointment powers of this bylaws are not officers of Goldman Sachs? Your Honor, I think that would impose a drafting obligation on Goldman Sachs. That's the idea. It's frankly not realistic. I'm sorry? Oh, you said not realistic. Not realistic. Why is it not realistic? You put in one sentence into the bylaws. But then the next point is we need to put in a sentence that says someone for the avoidance of doubt who is acting in a similar capacity to a vice president, i.e., does the same thing in their cubicle, programming computers all day, but has a slightly lower pay and a different title, is not an officer. But you said the lower court jumped to the conclusion without going through any detailed analysis. Did the court even entertain paroled evidence? Did they not? Did it not? Your Honor, I think what the court did correctly is, at least on the surface, it entertained undisputed background facts, which under the Eagle Industries decision, as adopted by this court in the NBIA decision, is appropriate to consider, are appropriate to consider to decide whether something is unambiguous in the first place. Here, you can look at these undisputed background facts, those being the fact that there is not a single shred of paper on this earth that says Mr. Lenikov is an officer. It doesn't exist outside of the brief that he's filed in this court and the district court. We'll get you back on that. Thank you, Your Honor. Mr. Marino. Good morning, Your Honors, and may it please the court. We agree that the appeal turns on a single question of whether Mr. Lenikov was an officer of Goldman Sachs and Co. within the meaning of Section 6.43, the indemnification provision of the Goldman Sachs Group's bylaws, and for that reason was entitled to indemnification and advancement. For the reasons set forth, not – 6.3 or 6.4? It's actually 6.4 subsection 3. That's the way Judge McNulty referred to them. They're not so designated in the bylaws, but to differentiate the first section, 6.41, which applies to the corporation. To be an officer, don't you have to go through a process, as Mr. Duffy is outlining? You have to be apparently elected or appointed under the authority granted by the bylaws? Well, the problem with that, Your Honor, is how would you know it? How would the reasonable, objective observer or reader of these bylaws have any idea that a letter, such as we have in this case, and Judge Fischer, you asked Mr. Duffy to concede, and he ultimately did, that Mr. Lenikov was appointed. Well, he was hired, and that's the appointment process, and that's in the record, and it's a letter that comes to him from a vice president. It's at A1106 in the record, and it says, we're pleased to welcome you as a vice president. Counsel, if I, for whatever reason, lose this job, go to work for Goldman, and I'm told, Mr. Jones, you are going to be in this 10-by-10-foot room, just you, and you are vice president of supplies, paperclips, the whole nine yards. You're planning an interesting retirement, Your Honor. I steal all of those things and take them home to my children and grandchildren and give them for their school supplies. Yes, sir. I get indicted for industrial theft, and then I turn to Goldman and say, hey, I'm an officer because you said I was vice president of supplies. Pay me and pay for my expenses. Yes, sir. That's okay. That doesn't seem right to you. Well, but that's what you're asking. That's how you're asking. That is correct, Your Honor. It doesn't seem right to Goldman Sachs either, and that's why they have whistled up this statutory argument, this bylaws argument, which, as I believe Your Honor's questions make clear, is simply there's just no basis for it whatsoever. What's troubling them is they don't believe that indemnification and advancement rights ought to apply when an individual is accused of perfidious acts against the corporation. That is not the law. If they didn't want to pay indemnification and advancement to someone who, by reason of his employment, was not only accused of wrongdoing but was accused of wrongdoing by them. In Your Honor's example, your employer says you've stolen the paper clips and now we're going to go to the FBI if we could whistle up a federal offense out of that and we're going to have you called on the carpet and you say, well, thank you very much. You appointed me a vice president. Your bylaws say officers get indemnification. Anybody I've ever spoken to in life, including, and this is found clearly in Rule 3B2 of the SEC rules, knows a vice president is an officer. An officer is defined to include them. I want you to pay me. This is the problem. The law says they have to pay. They could have put in their bylaws, we're not paying. That actually is an interesting point, Mr. Marina, that you bring up. You steal from me my intellectual property. Now you're criminally accused. I have to pay you to have a lawyer represent you against Goldman Sachs. That's against the state. But I am a witness in that case. Well, I think you had it right the first time. It's sort of a Goldman government complex here that we're dealing with. We know that if they stole from the employer that Judge Jones says would have hired him, we know they would have had difficulties. I ask that in this context because I don't know if you mentioned the law. We're just really referring to bylaws here. Maybe that's what you're referring to. Well, the bylaws. You say the law requires representation, but the argument here has to do with the bylaws. Well, the reason I advert to the law is that the law is very clear that you do not, your advancement and indemnification rights that are guaranteed under the bylaws do not go away because you happen to be accused of a perfidious act against the employer. Lots of times that happens. Goldman Sachs has no problem when people are accused of stealing for it in defending them. They just have a problem if someone is accused of stealing from them. The problem is they know that's not the law. They know, and we've cited the cases throughout our briefs, they know that even where you are accused of perfidious acts against the company, if the bylaws ensure you have indemnification rights, you get them. So instead of approaching it from the legal realist perspective that Your Honor's questions are approaching it from at this time, they simply say, look, we know we don't want to pay this guy, so we're going to say he's not an officer. Guess what? He is an officer. He was appointed a vice president. That's an officer position. Okay, let's go back to that point regarding appointment. This is 6.4. Yes, sir. Which refers to the term officer when used with respect to the corporation, shall refer, I'm reading from 6.4, one, two, three paragraphs down, about the middle of that sentence. The term officer when used with respect to the corporation shall refer to any officer elected or appointed that it says, pursuant to authority granted by the board of directors of the corporation, pursuant to clauses one, two, three, et cetera, et cetera, et cetera. Yes, sir. So they're referring to a process there. Yes, they are. Just because you're a vice president, apparently, according to this, doesn't make you an officer unless it's done pursuant to other provisions. I completely agree with Your Honor. And Goldman Sachs was quite careful when they drafted their bylaws to make sure that when they were talking about someone who would be a vice president of the parent company, that's the cap C corporation. That's the language Your Honor was adverting to. We call that 6.4 subsection one, although it's not so designated. When used with respect to the cap C corporation, the parent, the Goldman Sachs group, the defendant, the drafter of the bylaws, officers shall refer to, quote, any officer elected by or appointed pursuant to authority granted by the board of directors of the corporation, pursuant to clauses one, two, three, and four. That's the parent. The second section, when used with respect to a subsidiary or other enterprise that is a corporation, shall refer, officers shall refer to, quote, any person elected or appointed pursuant to the bylaws of that company. But when they get to section three, which is where we are, all of a sudden this appointment language, that is the entire basis for their claim in this case, is gone. The whole idea of this is appointment, not only is it appointment as we normally understand it, I send you a letter and you're appointed, but this is a vaunted process. We don't tell you anywhere in the bylaws what the process is. And in section three, this section, for some reason, although it's in the first section and in the second section, you know, this question was asked when Mr. Duffy was on his feet, why not fix the bylaws? And he said, well, it's unrealistic. Is this unrealistic? With respect to a, let's go to section three. I'll show them how to fix it. I can help Goldman Sachs. When used with respect to a subsidiary or other enterprise, You don't send them a bill for your service. Oh, my heavens, Your Honor. I've been sending them bills. They seem to ignore them without any difficulty whatsoever, regardless of court orders. To the contrary. When used with respect to a subsidiary or other enterprise that is not a corporation, that's this entity, Goldman Sachs & Co. is a limited liability company, or is organized in a foreign jurisdiction, the term officer shall include in addition to any officer. You know how they could fix it? shall include in addition to any officer appointed by this special process. You know what's odd, though, is that the way you're analyzing it, the process is much more stringent for the corporation to become an officer because it has more requirements than it is for a subsidiary. As you go down, it's a lot more lax. You know why that is? It's more easier to become an officer. I think that's right. And let me tell you something. There isn't any secret about why Goldman Sachs has a bunch of vice presidents. It's good for the vice president. It's a form of compensation, right? You're a vice president. You're not some low-level person. And it's good for Goldman Sachs so that when all these vice presidents deal with the counterparties, and Mr. Alenikoff's, the testimony in this case from Mr. Schlesinger, was that Mr. Alenikoff regularly dealt with the exchanges in his position, although now they basically have him as president in the broom closet. But if you do that, you can say, I'm a vice president. It's good for them. This profligacy that Judge McNulty had referred to, it does benefit them. And, yeah, if you're going to be an officer of the corporation Cap C, right, with all the sort of these – and these are the executive officers they're talking about there. They get the big wigs, right? Well, you're going to go through this appointment process. There's going to be a written consent of the general partner. And if you're going to be an officer of a sub that's a corporation, they make it clear that they've got to put it in those bylaws. They can do that any way they want, right? The sub can put it in its bylaws. But all these other entities, such as Goldman Sachs and company – by the way, I never knew it wasn't a corporation until I got involved in this case. I bet you the man on the street doesn't know that either. But it's not. It's an entity that's a limited liability partnership. They just choose to define the term in a circular way, right? Now, this is how they got Judge McNulty. But isn't part of the – isn't one of the errors in a district court's analysis that it started out trying to analyze what a vice president was? Oh, I don't think so, Your Honor. Because isn't the question here one of statutory-slash-bylaw analysis of what an officer is? Sure it is. But, first of all, we know from SEC Rule 3b-2, which couldn't be clearer – and, by the way, notwithstanding the fact that for some reason they advert to this rule, I cannot imagine why – that rule specifically states definition of officer – not definition of vice president – definition of officer, quote, the term officer means a president, vice president, secretary, treasurer, and so forth. So you become an officer by virtue of a title? Yeah, absolutely. Going back to Judge Fischer's point, it has nothing to do with the functioning? Absolutely not. And you don't have to know that? It has nothing to do whether there's trust, whether there's authority? Absolutely not. Whether you have command over anyone? Absolutely not. And that's why it's important. They are careful to say, when used with respect to a subsidiary or other enterprise that is not a corporation, the term officer shall include, in addition to any officer of such entity, any person serving in a similar capacity or as the manager. So they take account of that. Okay, okay. Let's stick to your words you just cited there. Yes, sir. Let's go to any person serving in a similar capacity. Yes. It seems to me, at that point, you have to analyze what an officer is. Right. Because it refers to officer. That's right. So you go back, then, to the dictionary definitions of officers, because it's not defined. Right. And you get these points of appointed or elected, authority or trust. And if you go to the – At least I got your adversary. It was tough to get him to do this. But at least he acknowledged that, all right, maybe Mr. What do you say? I say that authority to do a particular act is completely irrelevant. I say that Goldman Sachs and company, the Goldman Sachs group, I beg your pardon, the parent, had within its capacity the right to do whatever it wanted in its bylaws. Back to your initial question, they could have said, we will indemnify you if we choose. We are not going to indemnify you. We reserve the right to withdraw it. If we don't like what you did, if you perform an act that we think is not in our interest, we don't have to indemnify you. This is not complicated. I want to make sure I answer all your Honor's questions. The first question, the notion that Judge McNulty erred by defining vice president, I mean, we – first of all, we know the SEC definition of officer specifically includes vice presidents, but how else do you approach definition? I got a guy who's a vice president. He's appointed vice president. What does that mean? Does that mean he's an officer? Your Honor. But they argue that's not the question. The question is, what's an officer? That's sophistry. It's kind of the same point. I mean, if I were to say to you – Well, I'm not so sure that you can – I'm not so sure that you can so easily say that. Well – As we're instructed to analyze questions about what does a bylaw mean, and that's really what's before us. Yes. What does a bylaw mean? Right. And the way – the first clue is the first time they use the word officer is that it's not in Section 6.4. It's in Section 1.7. Inspectors. Prior to any meeting of stockholders, the board of directors, a chairman of the board, a vice chairman of the board, a chief executive, a president, a chief operating officer, a vice president, or any other officer designated by the board shall appoint. So the first time they use the word officer, they use it assuming everybody knows that's the kind of officer. Does that relate to subsidiaries? It doesn't. And that's not my point. Same thing for 4.1. 4.1 doesn't relate to subsidiaries either. But again, 4.1, the board of directors shall take such actions as may be necessary from time to time to ensure that the corporation has such officers as are necessary to do X, Y, Z. And included in that, Section 3, one or more vice presidents, and in Section 4, one or more other officers. And then lower in the provision, one or more officers of the kind described in Clause 3. Well, that leads to my, that led to my confusion about what an officer is. And I asked Mr. Duffy about that. He quickly pointed out that doesn't relate to the group. That relates to Goldman Sachs. Okay. And the problem with that is, and this is why, if Judge McNulty was a less careful judge, if he was quicker to the bottom line, he could have ruled in our favor 15 months ago under contra preferentum. We know that Delaware has a strong public policy in favor of advancement. We know that Delaware law will tolerate some ambiguity in a bylaw that gives you advancement even without considering parole evidence. You don't even have to consider it. We know that the parole, you know how they got them to consider parole evidence in this case? Here. It's the TROP affidavit. It appears at A305 it begins, and on A306 is the offending language. Paragraph 7. GSCO, which is governed by a memorandum of agreement between the Goldman Sachs and Co. LLC as the sole general partner and GS Group as the sole limited partner, appoints officers in power to act on its behalf. To appoint an officer of GSCO, the sole general partner adopts a written resolution electing a particular person to hold a particular office. Anybody reading that would think it must be in the memorandum of agreement. Why is he telling us in the first sentence that it's governed by a memorandum of agreement and in the second sentence how this appointment process works? Because when you look at the memorandum of agreement, it's not in there any more than it's in the Bibles. So I look at this pretty simply. I try to be as simple as I can. If you had to go through the mental gymnastics that you have to go through, and I took TROP's deposition, and I had hair at the beginning of it. I'm telling you, he walked me through the most Byzantine journey. It's like an acid trip through New York partnership law to try to tell me what a partner can do and what an officer can do, all of which is supposed to help me understand. I'm presumed to have relied. This case that they cited... Your argument seems to be that it's clear from the bylaws that Elenakov was an officer, but now you're saying, well, it's not that clear. It's clear to me that he's an officer. You just sat at that position where you lost hair. Let's put it this way, and this is where Judge McNulty was. It's either unambiguously clear that he is an officer, and by the end of the day, Judge McNulty, who, by the way, spent 63 single-spaced pages going through this, by the end of the day, he says, you know, and this is right, it's either unambiguously clear that he is an officer because they throw this term around and it's clear that everybody on broad and market and everywhere else knows it includes vice presidents, or it's ambiguous. It certainly isn't, as Mr. Duffy would have the courts believe, unambiguously clear that you are not an officer because you weren't appointed when Section 6.43 is the only of the three sections that doesn't refer... Very interesting, but we do have to finish up. One or two other questions. Let me just ask you this. What if we conclude and agree with you that there's an ambiguity? Well, I'm not so sure, Judge. First, I don't mean to interrupt your question, but I think it's either unambiguously the case that he's an officer. At best-case scenario for them, there's an ambiguity. So let's assume that's the case. Okay, so you're... Okay, so let me rephrase my question. Yes. Let's suppose we conclude there's an ambiguity. Yes, sir. Where are we? You are absolutely to order advancement, and sooner rather than later. Contra preferendum couldn't be clearer for years. But on that ambiguity... Yeah. On that ambiguity, if we disagreed with your interpretation of contra preferendum for determining eligibility for advancement, can we affirm a grant of a summary judgment on advancement, which is what the district court did here on ambiguity? Absolutely. If so, how can we? Absolutely. Because the judge, and I appreciate the court's question, the judge did not, at the beginning of the day, turn to contra preferendum, and he really only got to contra preferendum as an alternative last resort. Let's look at what he actually did, because he did it very, very clearly. And first of all, although the judge, although Goldman claims he misapplied the standard and decided facts against him, what he said is, quote, even resolving every material factual issue in favor of Goldman, I find that the bylaw may be enforced as written. So he accepted Goldman's claims that it appoints officers by resolution and pays the legal fees of nearly everybody, and that neither that process nor the payment history is published or written anywhere. None of that raises a genuine issue of material fact. So at the end of the day, when we know that, first of all, before you even get to the question of ambiguity, when you realize, as Judge McNulty clearly realized at the end of the day, I have a strong public policy in favor of advancement. I have a provision that sure seems to include a vice president, sure doesn't seem to anywhere get specific about not just appointment, in the sense of I sent you a letter, but, hey, you have to have this process. When these guys appeared before Judge McNulty in October of 2012, I'm trying to get summary judgment at that point, because I'm starting to spend money to defend the case, they say, you know what, we have this process that clearly distinguishes officers from non-officers. That means in the mind of the perceiver, right? If it's got to be clear, it's got to be clear to someone. Then you find out it's a secret appointment process. I say, who knows about it? Do you ever tell anybody? Do you have an orientation session? When people come in and you say, you know, the bylaw speaks kind of sloppily about officers, but you're not one. You have to be appointed by this written consent. No, we don't do that. Well, do you publish these? No, we mark them confidential. Well, okay, how would I know, right? This is what Judge McNulty did. He said, even assuming every fact that you say is true, that you appoint people exactly the way you say that you appointed them, that you've paid 51 out of 53 people. Then where is the ambiguity? Well, I think it's, in my view, it's unambiguously the case that, and I think this couldn't be clearer, they were sloppy in not, if they wanted officer to mean something other than we all know it means. But if you accept all of Goldman Sachs' arguments that this is a clear document, and they outline and they give you the road map, then there apparently is no ambiguity then. If you accept Goldman Sachs' position. If you accept Goldman Sachs' position, officer doesn't mean officer. Officer doesn't include people, the SEC, which is, they've already said it. And not every vice president is an officer. Right, it doesn't include that. That would be your point. It doesn't include... Wait, I want to move on, but I just want to ask you one question. You mentioned the remedy here, which is either advancement or... And indemnity. Was it reimbursement? Indemnity? It's actually, and here's the issue. So they promise to indemnify you. Now, Sergey Alenikov, every chance they get, in every courtroom that we find ourselves in together, we hear that he's a thief. So now I'm going to tell you the rest of the story. He was acquitted of every single thing he was accused of, right? We have that record. Okay, so I want to get indemnified. The indemnification is, after the fact, once I'm successful, I get indemnification. But here, okay, is that true with regard to this case in the state court? No, we haven't won yet. So it's advancement in the state case that we're looking for. It's indemnification, which Judge McNulty hasn't ruled on because we haven't had discussions. And that's not before us. That's not before you. That's the issue of we won. Even their appeal from the denial of their summary judgment motion doesn't bring that part before us. Their appeal of the denial of their summary judgment motion, to the extent that the judge denied summary judgment to both parties, I understood it to be a cross appeal on advancement only. I don't think they suggest that under any definition, the indemnification piece would be appealable now. It wouldn't be jurisdiction. Judge Joseph's question. I know this is sort of at the end of the whole scheme here, but did you not oppose this appeal by saying it's not appealable in the first place? Actually, here's what happened. We did not – I will be candid with Your Honor. I always thought that what would happen, because this case turned on what a definition of an officer was, right? I always thought that what would happen is Judge McNulty would resolve both issues, that we'd have discovery on whether he was an officer, and that would take care of indemnification as well as advancement. Instead, because discovery was limited to those narrow issues, which frankly have exactly as much to do with indemnification as advancement, but for whatever reason, Judge McNulty said, procedurally I haven't allowed discovery on Goldman Sachs' quote, unquote, counterclaim, which is another whole story, for a set off, and so I'm not going to rule on that yet, right? There isn't any doubt that we prevailed. They don't have any question that we prevailed in the federal case. We were acquitted, right? And there isn't any doubt that we spent money. There's an issue they will challenge the amount of money. That's a reasonable thing and so forth. But at the time of this, we might – Would that decision depend on how we resolve this case, Your Honor? The decision – Of indemnification. Oh, certainly. Yeah.  what Your Honor, as I beg your pardon, is going to decide – Is he an officer? is whether Mr. Alenikoff is an officer. If you affirm that Mr. Alenikoff is an officer for purposes of advancement, he's absolutely an officer for purposes of indemnification. Okay. Thank you very much. Thank you very much. Mr. Duffy? Thank you. Thank you. Mr. Duffy, a point you did not cover. Let me follow up on something that Mr. Marino just answered in response to my question. You've appealed the denial of your summary judgment motion. In that appeal, have you brought before us the question of whether or not – Do you think – let me put it this way. Do you think the question of whether or not Mr. Alenikoff is an officer for purpose of indemnification is properly before us? I think it is, Your Honor. The definition of – or the question of whether he's an officer determines not just advancement but indemnification. And so pursuant to the court's pending appellate jurisdiction, there would be nothing left to do in the district court other than enter judgment in our favor on both of those claims. That wasn't briefed and argued. I mean, that wasn't an issue that was briefed, was it? Your Honor, we – Indemnification for the attorney fees in regard to the federal case? Indemnification in general depends solely on his status as an officer. Will our decision influence that other issue? But Judge McNulty hasn't issued an order in that case. No, he hasn't. However, I think there's no dispute, there's no daylight between Mr. Marino and myself. The point is we can't address it if he hasn't already ruled. What you can address is whether he's an officer. And if the court answers that question in the negative, then it's clear that he's not entitled to indemnification. That's fine. Judge Fischer, I'd like to answer a question that you asked to Mr. Marino and hopefully give a little bit better of an answer. You asked him whether if you find that there is an ambiguity and that the doctrine of contra-preferendum does not apply, how can you affirm? And the answer is that you cannot, because then there would be a dispute in the evidence on both sides that's in the case, and we're entitled as the non-movement on his motion to have every inference drawn in our favor. And only if a reasonable jury could not possibly find anything other than that he was an officer would he be entitled to summary judgment. This is a very important issue, a very important mistake that was made by the district court notwithstanding its best efforts below. In the first opinion denying summary judgment back in December 2012, Mr. Leniakoff made the argument that because of the fact that Delaware General Corporation Law Section 145K says that the Delaware Chancery Court has to, or at least should or can, go about deciding advancement via what's called a summary proceeding, therefore Judge McNulty should do the same thing. Now, pages 190 to 192 of the record in the December 2012 opinion, Judge McNulty goes through in some detail why that's wrong, because it would be a matter of state procedural law that cannot be applied in a federal court. The federal rules of civil procedure apply here. The summary judgment standards of Rule 56 apply here. But now fast forward to October of 2013. The district court completely reversed course without actually saying that it was doing so, and in the process trampled all over our rights as the non-movement on a summary judgment motion, on his summary judgment motion. And you need only look at some of the... You're not suggesting that Delaware law does not apply in our interpretation of the bylaws? I am not suggesting that, Your Honor. It does apply in interpretation of the bylaws. It does not apply in determining the proceeding, the type of proceeding in which we will have our rights and defenses adjudicated. Now, again, pages 190 to 192 of the record, the district court made clear that the summary proceeding doesn't apply. But, again, fast forward to October 2013. At appendix pages 16 to 17, the district court said that the Delaware Advancement Statute, quote, almost explicitly prioritizes speed over accuracy, unquote. That's what happened here. He prioritized speed over accuracy, and more importantly for purposes of the summary judgment standards, he prioritized speed over our rights as a non-movement under Rule 56. You can't do that. It violates the Erie Doctrine. He also said, around the same part of the opinion, pages 16 and 17 of the record, that the Delaware Advancement Statute, quote, contemplates a truncated proceeding ordinarily on a paper record. That's not the summary judgment rule. Summary judgment doesn't say that he gets to have his rights adjudicated on a paper record. And ultimately what Judge McNulty found is that that's embedded in the state's substantive law. That's a direct quote. He italicized that. So he went completely the other direction without explicitly saying that he did so. But I think the comparison of the opinions makes clear that he did, and that is a violation of the Erie Doctrine. It's an application of state procedural law in contravention, again, of our rights as a non-movement. Appendix page 15, also part of his opinion, quote, I find that the statute does strongly favor advancement, even in doubtful cases, unquote. Now, that, beyond being a misapplication of state procedural standards in a federal district court, is actually an improper burden shift. That appears to put the burden of proof on us as the non-movement on summary judgment motion to prove his disentitlement to the claim. That's not the law. That's not Rule 56. And, effectively, what we had here was a burden shift over to us in complete contravention to Rule 56. And, finally, I would ask the court to – But it's a very narrow issue, isn't it? I mean, the question seems to me to be whether under the bylaws, Elena Koff is an officer or not. That is a narrow question. I think – It's a matter of law. I might exclude the word under the bylaws there. Is he an officer? If he's an officer, then he gets to come in and get some benefit under the bylaws. But you can look at the undisputed historical background facts outside of the bylaws. You want us to look at a dictionary definition of officer? I think the Delaware Supreme Court wants you to look at the dictionary definition of officer. And I would also cite the court to the Smartmatic decision from Delaware Chancery Court. Very similar issue. They were trying to define the term United States, and they were trying to decide whether it included Puerto Rico. The court went through lots of definitions of the United States in various cases and statutes and said that in response to an argument made by one of the litigants, that definitions of the word Puerto Rico, the term Puerto Rico, even though they say it is in the United States or part of the United States, those are beside the point because the contractual provision at issue was United States. That's where you need to look. That's the Smartmatic case. I also want to make sure the court doesn't lose sight of something that the district court wrote that elucidated some of its reasoning in the October 2013 opinion. And that's at appendix page 615. It's the order that granted in part and denied in part our motion for a state pending appeal. Let me make sure I understand one point. If we find that officer is ambiguous under the bylaws, where are we in your opinion? You are weighing the evidence and looking at the material issue, looking at whether there are any material issues of disputed fact. Let me point the court just to two by way of example. Number one, as the court, the district court. So there are disputed facts at that point if we find an ambiguity. Oh, without question. If you find ambiguity, then if you draw inferences. So it at least sends us back to the district court for another day. That's right, Your Honor, for further proceedings on the advancement claim. What are the disputed facts? The disputed facts are whether the other vice presidents at Goldman Sachs and company were considered officers. We have one who was denied a request for advancement. A Goldman Sachs person in the in-house legal group wrote to him, we've decided you are not entitled to advancement or indemnification. Now, drawing every inference in our favor is the non-movement. The doctrine of contra preferentum, as I understand it, is imposed to make the drafter write a clearer document. So, I mean, if I say I can't figure out whether he's an officer or not, and I say, well, I better apply Delaware law and I'm going to apply this doctrine, I would hold it against you, basically. I would hold it against the drafter and make a decision. Is that right? Because I'm telling you I can't figure out what you're saying. I'm going to hold it against you. Therefore, I'm going to conclude that he's an officer. Why is that wrong? That's wrong because. This is what I understand to be contra preferentum. Right, and that's my understanding of contra preferentum as well, Your Honor. But the reason that that hypothetical is wrong is that Mr. Alenikoff is not a party to the GS Group bylaws. Remember, these are bylaws of GS Group, the parent company. He had no role at GS Group. So he's certainly not a party or a stockholder in GS Group that has the right to invoke the contra preferentum doctrine under bylaws like any of the other cases, like all of the other cases that Mr. Alenikoff has cited, the Stockman case, for example. But he didn't write them. GS did and subsection 3 says are in a similar capacity, basically. GS Group wrote the bylaws. That's right. He had no role at GS Group. He was an employee of GS Co. But in order to determine whether. See, if you go back to the district court's October, I'm sorry, December 2012 opinion, the first opinion denying summary judgment. The district court there made clear that this isn't the typical advancement situation where there's a dispute about whether a particular claim falls within advancement rights. So Mr. Marino got up here and spoke a lot about Goldman Sachs not wanting to pay for legal defense of claims that were brought by virtue of his client stealing from Goldman Sachs. That may be true, but it's not an issue before the court. It's not an issue we argue. We're not arguing that we are free from advancement because of the nature of his claims. We're arguing that we don't have an advancement obligation because he's not an officer and therefore has no rights whatsoever under the bylaws. Why couldn't you say if you did not want Vice President Alenikoff to be an officer, you should have made it clear in the bylaws? I think it is clear in the bylaws. You can always make something clear. Whether he's an officer or not has to be determined on the basis of the bylaws. Your Honor, hypothetically, the bylaws could say at the end, for the avoidance of doubt, anyone with the job title of Vice President is not an officer. I will concede that. But just because something could have been written more clearly than it was does not make it ambiguous. And ambiguity has to be judged in the context of particular circumstances. That's the teaching of the new Activision case that came out after the district court's order. You have to look at the context. You cannot glorify form over substance. That's what they said. And perhaps most importantly, they said that something that's ambiguous in one situation isn't necessarily ambiguous in every situation. So there may be instances where it is ambiguous but not here. If the court is inclined to grant our appeal, I would ask that it consider re-evaluating our prior motion for a stay of the district court's order. We are having to pay money out, have already paid seven figures to Mr. Leniakoff as a result of the district court's prior order. He admits that his client is penniless, and Judge McNulty's prior December 2012 opinion acknowledges. The order, Judge McNulty's order requiring Goldman Sachs to pay advance fees? To advance the fees. We've already paid. You didn't make that request in the district court? We did make the request in the district court, and it was denied except for a period of seven days. This court also denied our prior motion for a stay pending appeal via a different panel. But in that, my final point, Your Honor, in the order denying our stay except for seven days, I think the district court really summed up what it did wrong here. It said at page 615, quote, as to corporate bylaws and as to the issue of advancement in particular, the court must, generally on a paper record, resolve doubtful cases in favor of the employee. That said, there is room for disagreement, unquote. What he said there is that he gets the benefit of the doubt, and we basically have to prove our case beyond a reasonable doubt as the non-movement on a summary judgment motion. So at a bare minimum, the court should vacate the entry of summary judgment in his favor and remand for further proceedings. We think Officer is unambiguous in these bylaws, which would militate in favor of a granted summary judgment in our favor. Thank you, Your Honor. Mr. Duffy, thank you very much. Mr. Marino, thank you. Thank all counsel. Very interesting case, and we will take it under advisement. Thank you.